[No. 66918-4-I. Division One. January 22, 2013.]

THE STATE OF WASHINGTON, *Respondent*, v. ALLAN WESLEY
PARMELEE, *Appellant*.

900

*Allan Parmelee*, pro se.

*Casey Grannis* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Amy R. Meckling, Deputy*, for respondent.

¶1 APPELWICK, J. — Parmelee appeals from his resentencing for a 2004 conviction of two counts of first degree arson. The Washington Supreme Court vacated Parmelee's initial exceptional sentence based solely on the lack of jury findings required under *Blakely v. Washington*. 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). On remand, the trial court imposed an exceptional sentence of 130 months on each count, to run consecutively, based on its

finding that the presumptive standard range sentence was "clearly too lenient." Parmelee argues that the trial court miscalculated his offender score and lacked statutory authority to impose an exceptional sentence based on a statutory aggravator that no longer exists. Parmelee also argues that the new statutory aggravator violates the ex post facto clause, so he must be resentenced within the standard range. The trial court did not independently review and calculate Parmelee's offender score. It properly retained the offender score from the first sentencing. The trial court had statutory authority to impose an exceptional consecutive sentence based on the statutory aggravator in effect when Parmelee committed his crimes. No ex post facto clause violation occurred. We affirm.

## FACTS

¶2 In April 2004, a jury convicted Allan Parmelee on 2 counts of first degree arson for firebombing a vehicle in 1998 and another in 2002. The trial court calculated Parmelee's offender score to be 13, based on 17 federal convictions for alien smuggling and conspiracy, 2 counts of deceptive practices in Illinois, and 1 Washington conviction for stalking. The trial court imposed an exceptional sentence of 288 months on each arson count, to run concurrently. This was based in part on its finding that a presumptive standard range sentence would be clearly too lenient. Parmelee timely appealed his sentence and filed a personal restraint petition (PRP). But, he abandoned the appeal when he did not pay the required filing fee and later moved to voluntarily withdraw his PRP.

¶3 Three weeks after Parmelee's sentencing, the United States Supreme Court decided *Blakely*, which held that the Sixth Amendment requires aggravating sentencing factors, other than the fact of a prior conviction, to be submitted to a jury and proved beyond a reasonable doubt. 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120

S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). Five years later, the United States Supreme Court limited *Blakely* by allowing trial judges to make findings of fact necessary to impose consecutive exceptional sentences. *Oregon v. Ice*, 555 U.S. 160, 163-64, 129 S. Ct. 711, 172 L. Ed. 2d 517 (2009).

¶4 In 2008, Parmelee filed a PRP directly with the Washington Supreme Court, arguing that the trial court miscalculated his offender score and violated *Blakely* by finding an aggravating factor a jury needed to find. The State conceded that the *Blakely* error required remand for resentencing but argued the offender score issues were time barred. The court granted Parmelee's petition only on the exceptional sentence issue. It vacated his sentence based on the Sixth Amendment violation under *Blakely* and remanded for resentencing.

¶5 At resentencing, the State requested that Parmelee be sentenced to 144 months on each count, to run consecutively. The State also argued that the issue of Parmelee's offender score was not before the court, because the case was remanded only on the exceptional sentence issue. Nonetheless, Parmelee, appearing pro se, asserted that his 17 federal convictions constituted same criminal conduct so they should be scored as a single point. He also argued that his Illinois convictions were not comparable to any Washington offense, so they should not be counted in his offender score. As a result, he explained, his offender score should really be only three points, so an exceptional sentence was inappropriate.

¶6 The trial court imposed 130 months on each count, to run consecutively. To support this exceptional sentence, the trial court relied on Parmelee's high offender score of 13 and its finding that running the sentences concurrently within the standard range would result in one of Parmelee's current offenses going unpunished—so he would essentially receive a "free crime." The trial court concluded that "[t]he operation of the multiple offen[s]e policy would be clearly too lenient without imposition of consecutive sentences in this matter." Parmelee appeals.

## DISCUSSION

¶7 Parmelee makes five arguments on appeal. The first three go to the calculation of his offender score. First, he argues that his federal convictions for alien smuggling and conspiracy constitute the same criminal conduct, so they should be calculated as only one point instead of eight. Second, he argues that his two Illinois convictions for deceptive practices are not legally or factually comparable to Washington's unlawful issuance of checks or drafts statute, so those convictions should not count toward his offender score. Third, in his statement of additional grounds, Parmelee also argues that the trial court erred by including a point for a prior conviction that was awaiting resentencing. Fourth, Parmelee asserts that the trial court at resentencing did not have statutory authority to impose an exceptional sentence based on the clearly too lenient aggravating factor, because it no longer exists post-*Blakely* under the new aggravator statute. Finally, Parmelee argues that applying the new statutory free crime aggravator would violate the ex post facto clause of the federal and state constitutions, because it makes it easier for the trial court to impose an exceptional sentence. U.S. CONST. art. I, § 10, cl. 1; CONST. art. I, § 23.

### I. Offender Score

¶8 On remand, an issue becomes appealable only if the trial court exercised its independent judgment to review and rule again. *State v. Barberio*, 121 Wn.2d 48, 50, 846 P.2d 519 (1993) (citing RAP 2.5(c)(1)); *see also State v. Kilgore*, 167 Wn.2d 28, 37, 216 P.3d 393 (2009) (discussing *Barberio*). In *Barberio*, the defendant did not challenge his exceptional sentences on appeal. 121 Wn.2d at 49. At resentencing, he challenged for the first time the aggravating factors supporting his original exceptional sentence. *Id.* at 49. The trial court declined to address the issue and imposed the same exceptional sentence as before. *Id.* at 50. The trial court was

explicit that it was not considering anew the prior exceptional sentence: " 'So far as I'm concerned, I really don't know why it would be necessary for me to revisit the issue.' " *Id.* at 51. The court permitted counsel to argue his position on the issue but again responded that it was unclear whether counsel was even properly before the court on that issue. *Id.* at 51-52. The trial court acted within its discretion to decide whether to revisit an issue that was not the subject of appeal. *Id.* at 51. The appellate court then properly denied review of the exceptional sentence issue, because the trial court declined to independently review it and rule again. *See id.* This rule both promotes judicial economy and encourages timely appeals. *See id.* at 52. In *Kilgore*, the Washington Supreme Court affirmed the vitality of the *Barberio* rule post-*Blakely*. 167 Wn.2d at 40-41; *see also State v. Rowland*, 160 Wn. App. 316, 325, 329, 249 P.3d 635 (2011), *aff'd*, 174 Wn.2d 150, 272 P.3d 242 (2012).

¶9 At the original sentencing, Judge Spector calculated Parmelee's offender score to be 13. Parmelee then filed a timely PRP and a timely notice of appeal in the court of appeals. However, he abandoned his appeal when he did not pay the required filing fee, and he withdrew his PRP. Four years later, he filed a PRP directly with the Washington Supreme Court, again challenging his offender score, as well as his exceptional sentence post-*Blakely*. The State maintained that the offender score issues were time barred under RCW 10.73.090, which requires collateral attacks to be filed within one year of final judgment. The Supreme Court granted Parmelee's petition only on the issue of whether his exceptional sentence violated the Sixth Amendment under *Blakely*. It then vacated and remanded his original exceptional sentence.

¶10 On remand, Judge Armstrong repeatedly indicated that the exceptional sentence issue was the only one before the court. At the beginning of the presentencing hearing, Parmelee stated that a number of issues needed to be addressed. Judge Armstrong replied:

Well actually the way I read the record is the only issue that we can address, given the law of the case and given the finality of everything else, the only issue we can address is whether there should be an exceptional sentence.

We can't, for example, address your offender score; that is not before us.

Soon after, Parmelee made arguments about his offender score, but Judge Armstrong again reminded him they were "irrelevant to [the] decision," because "that issue has gone by." After confirming that Parmelee waived his right to counsel, Judge Armstrong told Parmelee he could describe in briefing why a mitigated sentence was appropriate but explained:

[T]he issue here is not everything that ever happened in this case from the time you were arrested, the issue here is the narrow legal issue of whether the Court can, or whether it should run your time consecutively as an exceptional sentence, because of the multiple offense policy under the SRA.

Thus, Judge Armstrong made clear before Parmelee's actual resentencing that the only issue she would address was his exceptional sentence under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW.

¶11 Later at Parmelee's resentencing hearing, Judge Armstrong reiterated that she would decide only the narrow SRA issue. Parmelee nonetheless argued at length why his offender score should be less than 13, and the State responded. Like the judge in *Barberio*, Judge Armstrong allowed Parmelee to make a record and argue the offender score issues but responded:

Thank you, Mr. Parmelee, I think you have made your record, so your offender score is 13.

Now is there anything you wish to address about the issue, which is the only issue referred back to the Court, and that is whether you should receive an exceptional sentence, or a sentence within the standard range?

Parmelee again tried to argue the offender score issues, so Judge Armstrong instructed him to read aloud the Supreme Court's remand order, which explicitly vacated only his exceptional sentence. After that, she told him again, "Well as we discussed the last time you were here, the only issue before the Court is whether you should receive an exceptional sentence or not." Based on these exchanges, it is clear that Parmelee was very persistent in pressing his offender score arguments. But, like the judge in *Barberio*, the judge here allowed Parmelee to make a record of his disagreement with her position and allowed the State to respond but was clear those issues were not before her for consideration. *See Barberio*, 121 Wn.2d at 51-52.

¶12 Parmelee argues that Judge Armstrong entered a finding that Parmelee's offender score was 13, indicating that she independently ruled on the issue. The State conceded this issue in its briefing and at oral argument. On this record, however, that concession is not well taken and we reject it. A finding as to offender score was necessary for the exceptional sentence calculations. But, making that finding does not mean that the trial court independently reviewed the issue and ruled again. In fact, Judge Armstrong was explicit that other than the original sentence and recoupment for DNA (deoxyribonucleic acid) testing, she was "going to leave in place everything in the original or the judgment by [J]udge Spector." The finding merely restated and retained the offender score of 13 from the original sentencing.

¶13 Parmelee's offender score issue was neither considered by the Supreme Court nor independently reviewed and ruled upon on remand. Judge Armstrong acted within her discretion to decline review of Parmelee's offender score. *Barberio*, 121 Wn.2d at 51. Because she did not independently review the offender score, it is not properly before this court. We decline to reach Parmelee's offender score claims.

II. Exceptional Sentence

¶14 Parmelee argues that in light of the 2005 and 2007 amendments to the SRA's exceptional sentence statutory scheme, the resentencing judge improperly applied the now nonexistent "clearly too lenient" aggravating factor. He posits that the original clearly too lenient provision is no longer operative, because the legislature intended the post-*Blakely* SRA amendments to apply retroactively to all sentencings, even if the crime was committed before the amendments. He further argues that the resentencing court could not properly apply the current statutory free crime aggravating factor, because it violates the ex post facto clause by making it easier for judges to impose an exceptional sentence. The only solution, he explains, is to be resentenced within the standard range.

¶15 A sentencing court's statutory authority under the SRA is a question of law, reviewed de novo. *State v. Mann*, 146 Wn. App. 349, 357, 189 P.3d 843 (2008). Sentences are determined in accordance with the law in effect when the offense was committed, absent clear legislative intent to the contrary. RCW 9.94A.345; RCW 10.01.040. However, remedial changes are generally enforced as soon as they are effective and can be enforced retroactively. *State v. Pillatos*, 159 Wn.2d 459, 473, 150 P.3d 1130 (2007). A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive right. *Id.* Conversely, substantive changes include those that aggravate a crime or allow courts to impose a more severe punishment. *State v. Edwards*, 104 Wn.2d 63, 70-71, 701 P.2d 508 (1985).

¶16 When Parmelee committed his crimes in 1998 and 2002, the statute in effect permitted a trial court to impose an exceptional sentence based on the aggravating factor that "operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly

too lenient." Former RCW 9.94A.535 (2001).[1] One way to impose this aggravating factor was for the trial judge to make a finding that " 'there is some extraordinarily serious harm or culpability resulting from multiple offenses which would not otherwise be accounted for in determining the presumptive sentencing range.' " *State v. Smith*, 123 Wn.2d 51, 55-56, 864 P.2d 1371 (1993) (quoting *State v. Fisher*, 108 Wn.2d 419, 428, 739 P.2d 683 (1987)), *overruled in part by State v. Hughes*, 154 Wn.2d 118, 140, 110 P.3d 192 (2005), *abrogated on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). The court in *Smith* explained that "[t]his inquiry is automatically satisfied whenever 'the defendant's high offender score is combined with multiple current offenses so that a standard sentence would result in "free" crimes—crimes for which there is no additional penalty'." *Id.* at 56 (quoting *State v. Stephens*, 116 Wn.2d 238, 243, 803 P.2d 319 (1991)). Parmelee's original exceptional sentence was based in part on the judge's clearly too lenient finding.

A. Changes in the Exceptional Sentencing Law

¶17 The sequence of cases and legislative amendments after Parmelee's original sentencing is relevant to our analysis. In 2004, three weeks after Parmelee's sentencing, the United States Supreme Court held in *Blakely* that the Sixth Amendment requires any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. 542 U.S. at 301. Washington law in effect at that time authorized judges to find such facts, including whether

---

[1] The portions of the sentencing statutes critical in this appeal were codified as former RCW 9.94A.390 (1997) and former RCW 9.94A.400 (1996) at the time of Parmelee's 1998 offense and were recodified without substantive change as former RCW 9.94A.535 (2001) and RCW 9.94A.589 (2001) by the time of his 2002 offense. LAWS OF 2001, 2d Spec. Sess., ch. 12, § 314 ((effective September 1, 2001) (LAWS OF 2001, 2d Spec. Sess., ch. 12, § 505)); LAWS OF 2001, ch. 10, § 6 (effective July 1, 2001). The recodified statutes were applied by the trial court at sentencing.

operation of the multiple offense policy resulted in a presumptive sentence that was clearly too lenient. Former RCW 9.94A.535(2)(i).

¶18 In April 2005, the Washington Supreme Court decided *Hughes*. There, the court held that the clearly too lenient finding was a factual one that must be made by a jury instead of a judge: "The conclusion that allowing a current offense to go unpunished is clearly too lenient is a factual determination that *cannot* be made by the trial court following *Blakely*." *Hughes*, 154 Wn.2d at 140. This holding overruled *Smith* to the extent that *Smith* allowed the clearly too lenient conclusion to be made by judges. *Id.* For the time being, judges could not constitutionally make the clearly too lenient finding.

¶19 The day after *Hughes* was decided, the Washington Legislature responded to the *Blakely* decision by passing the "*Blakely*-fix" amendments. LAWS OF 2005, ch. 68. It found:

> The legislature intends to create a new criminal procedure for imposing greater punishment than the standard range or conditions and to codify existing common law aggravating factors, without expanding or restricting existing statutory or common law aggravating circumstances. The legislature does not intend the codification of common law aggravating factors to expand or restrict currently available statutory or common law aggravating circumstances.

LAWS OF 2005, ch. 68, § 1. The legislature removed the original clearly too lenient provision, former RCW 9.94A-.535(2)(i), from the list of available aggravating factors. LAWS OF 2005, ch. 68, § 3. Conversely, the legislature codified the common law free crime aggravator: "The defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." *Id.*; RCW 9.94A.535(2)(c). Based on *Blakely*'s prior conviction exception, the legislature authorized judges, instead of juries, to make this now-statutory free crime finding. RCW 9.94A.535(2). Such a finding results

in an automatic exceptional sentence based solely on the defendant's criminal history and offender score.[2]

¶20 In the 2006 *VanDelft* case, the Washington Supreme Court held that *Blakely* and *Hughes* required a jury, not a judge, to make factual determinations supporting exceptional consecutive sentences. *In re Pers. Restraint of VanDelft*, 158 Wn.2d 731, 743, 147 P.3d 573 (2006), *overruled by State v. Vance*, 168 Wn.2d 754, 762-63, 230 P.3d 1055 (2010) (citing *Ice*, 555 U.S. 160).

¶21 In 2007, the Washington Supreme Court in *State v. Pillatos* interpreted the 2005 *Blakely*-fix procedural amendments to apply only to cases where trials had not begun or guilty pleas accepted. 159 Wn.2d 459, 465, 150 P.3d 1130 (2007). At issue in *Pillatos* was the application of the 2005 legislation's new procedure for juries to find facts justifying certain exceptional sentences. *Id.* at 468. Essentially, the *Pillatos* court held that those procedural changes did not apply retroactively. *Id.* at 466, 471, 474. The court declined to address whether the legislation made substantive retroactive changes to the law:

> Defendants argue that the 2005 legislature changed the aggravating factors that may form the basis for an exceptional sentence, substantively changing the law as it existed at the time they committed their crimes. Whether or not this is true in the abstract, defendants have not shown any relevant change. Accordingly, this issue is not ripe for our review and we await a case that better presents it.

*Id.* at 478.

¶22 The Washington Legislature quickly responded to *Pillatos* by again amending the SRA. In 2007 the legislature explained:

> In *State v. Pillatos*, the Washington Supreme Court held that the changes made to the sentencing reform act concerning

---

[2] *State v. Alvarado*, 164 Wn.2d 556, 568-69, 192 P.3d 345 (2008). The Washington Supreme Court held that this did not violate the Sixth Amendment. *Id.* at 569.

exceptional sentences in chapter 68, Laws of 2005 do not apply to cases where the trials had already begun or guilty pleas had already been entered prior to the effective date of the act on April 15, 2005. The *legislature intends that the superior courts shall have the authority to impanel juries to find aggravating circumstances in all cases that come before the courts for trial or sentencing, regardless of the date of the original trial or sentencing.*

LAWS OF 2007, ch. 205, § 1 (emphasis added) (citation omitted). This 2007 amendment added RCW 9.94A.537(2), which created a procedure for trial courts to impanel juries on resentencing to consider aggravating factors listed in RCW 9.94A.535(3). *See* LAWS OF 2007, ch. 205, § 2. Washington courts acknowledge that these 2007 amendments affirmatively changed the 2005 statute so that *Blakely's procedural* requirements apply to all cases before the court, not just those where the defendant has not pleaded guilty or been tried.[3]

¶23 The post-*Blakely* landscape was again changed in 2009 with the United States Supreme Court's decision in *Ice*. There, the Court limited *Blakely* by upholding an Oregon statute that allowed trial judges to make findings of fact necessary to impose consecutive exceptional sentences for discrete crimes. *Ice*, 555 U.S. at 163-64. The Washington Supreme Court held that *Ice* overruled its decision in *VanDelft* and recognized that a sentencing judge, not a jury, may find facts necessary to support exceptional consecutive sentences. *Vance*, 168 Wn.2d at 762-63. In *Vance*, the defendant was originally sentenced in 2003, before the 2005 *Blakely*-fix amendments. *Id.* at 756. In 2004, a trial court imposed an exceptional consecutive sentence on Vance, applying the same statutes as *VanDelft*, RCW 9.94A.589 and former RCW 9.94A.535 (2003). *Id.* at 757-58. The trial court found that operation of the multiple offense policy resulted in a presumptive sentence that was clearly too

---

[3] *State v. Elmore*, 154 Wn. App. 885, 906, 228 P.3d 760 (2010).

lenient. *Id.* The *Vance* court concluded that post-*Ice*, the clearly too lenient finding entered by the trial court rather than a jury did not violate Vance's Sixth Amendment right to a jury trial. *Id.* at 763.[4]

¶24 In the 2011 case *State v. Mutch*, the defendant committed his crimes in 1994, well before the *Blakely*-fix legislation. 171 Wn.2d 646, 651, 254 P.3d 803 (2011). His original exceptional sentence was then vacated in 2008. *Id.* at 652. At resentencing, the trial court imposed an exceptional sentence under the statutory free crime aggravator, without finding that the sentence was clearly too lenient. *See id.* Specifically, it found that under the presumptive standard range sentence, Mutch's multiple current offenses and high offender score would leave crimes going unpunished. *Id.* On appeal, Mutch argued that imposition of an exceptional sentence was not authorized by statute and violated his Sixth Amendment right to a jury trial. *Id.* at 656.

¶25 At the time of Mutch's trial in 1994, state law allowed for trial courts to impose exceptional sentences, without findings of fact by juries, if " 'there [were] substantial and compelling reasons.' " *Id.* at 656 (alteration in original) (quoting former RCW 9.94A.120(2) (1994)). One "illustrative" basis for an exceptional sentence, enumerated by statute, was that a defendant's multiple offenses would result in a " 'presumptive sentence that is clearly too lenient.' " *Id.* (quoting former RCW 9.94A.390(2)(g) (1990)). This was but one factor in an explicitly nonexclusive list of potential bases for departure from a standard range sentence. *Id.* In 1994, there was nothing barring a trial court

---

[4] In *State v. McNeal*, the State requested a jury be impaneled for purposes of resentencing on a 1997 conviction. 156 Wn. App. 340, 353-54, 231 P.3d 1266 (2010). The trial court certified the question of whether it could impanel a jury to consider an aggravating factor not specifically contained in RCW 9.94A.535(3). *Id.* at 344. The Court of Appeals held that trial courts do not have authority to impanel juries under the new free crime aggravator, RCW 9.94A.535(2)(c). *Id.* at 353-54. Because *McNeal* does not go to the trial court's statutory authority, it does not control our decision.

from imposing an exceptional sentence based on the common law free crime aggravator. *Id*. Thus, the *Mutch* court concluded that at resentencing the trial court had constitutional and statutory authority to impose the exceptional sentence based on the free crime aggravator. *Id*. at 658.

B. Ex Post Facto Clause Violation

■ ■ ¶26 Parmelee argues that the 2005 and 2007 legislative amendments substantively changed the law as it existed at the time he committed his crimes and that the ex post facto clause would be violated if we held that the trial court must apply the statutory free crime aggravator on remand. A new law violates the ex post facto clause if it is substantive, retrospective, and disadvantages the defendant. *In re Pers. Restraint of Powell*, 117 Wn.2d 175, 185, 814 P.2d 635 (1991). Substantive changes include those that allow courts to impose a more severe punishment. *Edwards*, 104 Wn.2d at 70-71. Imposing an exceptional sentence based on an aggravating factor not in existence when a defendant committed his crimes violates the ex post facto clause, because it disadvantages the defendant. *State v. Stewart*, 72 Wn. App. 885, 893-94, 866 P.2d 677 (1994).

¶27 Parmelee argues the statutory free crime aggravator and the old clearly too lenient aggravator are different, because the latter requires additional fact finding as to whether the existence of free crime results in a clearly too lenient sentence. The statutory free crime aggravator, on the other hand, merely requires an objective mathematical calculation. *State v. Alvarado*, 164 Wn.2d 556, 566-67, 192 P.3d 345 (2008). As a result, Parmelee contends, the statutory free crime aggravator makes it easier for judges to impose an exceptional sentence, because it decreases the proof required to make the requisite finding.

■ ¶28 The 2007 legislative amendments were in direct response to *Pillatos* and made explicit that the 2005 amendments applied retroactively. But, the stated legislative intent in the 2005 amendments was to make procedural and not substantive changes:

> The legislature intends to create a *new criminal procedure* for imposing greater punishment than the standard range or conditions and to codify existing common law aggravating factors, *without expanding or restricting existing statutory or common law aggravating circumstances.* The legislature does not intend the codification of common law aggravating factors to expand or restrict currently available statutory or common law aggravating circumstances.

Laws of 2005, ch. 68, § 1 (emphasis added). No case has squarely addressed whether these amendments substantively change the law of aggravating factors and violate the ex post facto clause if applied retroactively. However, *Mutch* is instructive here.

¶29 Mutch was originally sentenced under the prior sentencing regime. *Mutch*, 171 Wn.2d at 651. But, at Mutch's resentencing in 2008, the trial court applied the statutory free crime aggravator and made no clearly too lenient finding. *Id.* at 652. The Washington Supreme Court upheld this sentence. *Id.* at 658. As the *Mutch* court noted, "In 1994, there was nothing barring a trial court judge from implementing an exceptional sentence based on the 'free crime' exception." *Id.* at 656. Therefore, despite the codification of the free crime aggravator, the law had not substantively changed. While the question of ex post facto violation was not expressly raised in *Mutch*, it would necessarily have been rejected, because there was no substantive change in the law that could have been retroactively applied.

¶30 The same sentencing scheme applied to Parmelee at the time of his conviction as applied to Mutch.[5] Thus, we conclude that no ex post facto clause violation occurred. At Parmelee's resentencing, the trial court clearly had the authority to impose a consecutive exceptional sentence based on the now-codified, common law free crime aggravator.

---

[5] When Mutch committed his crimes in 1994, he was subject to the clearly too lenient aggravator under former RCW 9.94A.390(2)(g) (1990). *Mutch*, 171 Wn.2d at 656.

### C. Lack of Statutory Sentencing Authority under Clearly Too Lenient Aggravator

 ¶31 Parmelee also argues the trial court had no statutory authority at resentencing to impose an exceptional sentence based on the clearly too lenient aggravating factor, because it is not enumerated in the new statute and that statute applies retroactively. He is correct that the statute applies retroactively, but not that it deprived the trial court of authority to apply the clearly too lenient aggravating factor. This issue was resolved in *Vance*. Vance was resentenced under the same statutory scheme as Parmelee's original sentence. 168 Wn.2d at 757-58. The trial court at Vance's 2004 resentencing made a clearly too lenient finding in conjunction with the multiple offense policy, under the old statutory scheme. *Id.* The Supreme Court upheld that sentence in 2010, well after the *Blakely*-fix amendments. *Id.* at 762-63. This is consistent with the Supreme Court's subsequent conclusion in *Mutch* that nothing under the old sentencing scheme barred a trial court judge from implementing an exceptional sentence based on the free crime exception. 171 Wn.2d at 656. Under Parmelee's theory, the Supreme Court would have reached the opposite result in *Vance*.

¶32 We hold that the trial court at Parmelee's resentencing had constitutional and statutory authority to impose an exceptional consecutive sentence based on its finding that operation of the multiple offense policy would result in a presumptive sentence that was clearly too lenient.

### III. *Statement of Additional Grounds*

 ¶33 Parmelee argues that the trial court erred by imposing nonmandatory legal financial obligations without finding that he had any ability to pay. He claims that he was last gainfully employed in 1998 and that there is no

evidence of any other assets that would enable him to pay the imposed financial obligations. Similarly, Parmelee asserts that the trial court should have divided the financial obligations between him and his codefendant. But, imposition of fines is within the trial court's sound discretion. *State v. Curry*, 118 Wn.2d 911, 916, 829 P.2d 166 (1992). The trial court is not required to enter formal, specific findings regarding a defendant's ability to pay before it orders him to pay costs. *Id.* The proper time to consider the defendant's ability to pay "is the point of collection and when sanctions are sought for nonpayment." *State v. Blank*, 131 Wn.2d 230, 242, 930 P.2d 1213 (1997).

¶34 We affirm.

BECKER and DWYER, JJ., concur.

Review denied at 177 Wn.2d 1027 (2013).