# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | | |
|---|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71539-9-I | |
| Respondent, | ) | | |
| | ) | DIVISION ONE | |
| v. | ) | | |
| | ) | | |
| ANTHONY AQUININGOC, | ) | UNPUBLISHED OPINION | |
| | ) | | |
| Appellant. | ) | FILED: July 6, 2015 | |

SPEARMAN, C.J. — Anthony Aquiningoc was charged and convicted of multiple counts of assault, witness tampering, and violation of a no-contact order following a violent incident involving his wife. The trial court imposed an exceptional sentence and a no-contact order protecting his daughter, who was present during the assaults. Aquiningoc appealed and we remanded the case for vacation of one of two witness tampering convictions, reconsideration of the exceptional sentence, and consideration of alternatives to the no-contact order.

On appeal from the resentencing hearing, Aquiningoc challenges his fourth degree assault conviction on double jeopardy grounds. He also challenges his sentence, arguing that his waiver of the right to counsel at the resentencing hearing was ineffective, his offender score was improperly calculated, and his

exceptional sentence was improperly based on facts not proved to the jury. He raises additional issues in a statement of additional grounds. We affirm.

FACTS

On April 11, 2011, Anthony Aquiningoc went to the apartment of his estranged wife Ashley and their daughter to discuss the possibility of moving into a new home together. Aquiningoc and Ashley had previously talked about reconciliation and Ashley had already applied to several apartments for the family. Initially, the couple interacted calmly. However, after about fifteen minutes, Aquiningoc confronted Ashley about an old social media profile, which contained pictures of her and comments from other men. He yelled at her for not deleting the account. He began to verbally attack her, spewing racially and sexually charged insults. He also accused her of lying and being unfaithful. Ashley testified that he was "[v]ery forceful, very upset and angry, and he was standing in front of me in my face, and when he was yelling, he was basically spitting in my face." Verbatim Report of Proceedings (VRP) (7/19/11) at 26-27.

Aquiningoc calmed down for a short time and the couple sat down in the living room to discuss their finances and living situation. While the couple talked, Aquiningoc held their young daughter in his lap. When the little girl spilled some milk on Aquiningoc, he became angry again and poured the remainder of the milk down Ashley's back. Ashley was "in shock" and went into the bedroom to change her shirt.

A short time later, the couple resumed the discussion of their finances and living arrangements. When Ashley told Aquiningoc their apartment rental

applications had been unsuccessful, he became angry again. He accused Ashley of making mistakes on the application, not trying hard enough to find a cosigner, and lying about her efforts to find housing for the family. Each time she tried to respond, he interrupted and screamed at her. He called her a liar and a bad mother.

Ashley moved from the living room to the master bedroom in an effort to shelter their daughter from the argument. Aquiningoc, who was seated on the bed, continued to insult Ashley and threatened to take their daughter away from her. Aquiningoc got up and tried to push Ashley. She tried to push back, but missed and hit Aquiningoc in the face. In response, Aquiningoc yelled, "You want to fucking hit me, bitch?" VRP (7/19/11) at 39. He grabbed Ashley by the throat, pulled the collar of her shirt down, threw her on the bed, and put his hand around her neck. He got on top of her and strangled her and shook her head up and down. Aquiningoc squeezed her throat so hard and so long that she blacked out. Eventually, he released his hold and told Ashley, "I could have killed you." VRP (7/19/11) at 43.

Aquiningoc left Ashley on the bed and went to the closet, where he began gathering his clothes. He also threw many of Ashley's belongings around the room, ripped her clothes, tore photos, and knocked over a television. Ashley became concerned that their young daughter might get into the items Aquiningoc had strewn on the floor and began to pick them up. Eventually she made her way to the master bathroom and sat on the floor.

3

After some time, Aquiningoc finished packing and left the closet. He went into the bathroom where Ashley was seated and slapped her in the face, saying, "You lie to me. This is why I hit you. You lie to me and make me mad, and that's why I hit you." VRP (7/19/11) at 46. The force of the slap knocked Aquiningoc's wife backwards and caused her to bang her head on the toilet.

A short time later, police officers knocked on the front door of the apartment, apparently in response to a domestic disturbance call. They arrested Aquiningoc, who was subsequently charged with second degree assault arising from these incidents. Prior to trial, the State amended the charges, adding one count of fourth degree assault and one count of third degree malicious mischief arising from the April 11, 2011 incidents as well as four counts of violation of a no contact order, three counts of tampering with a witness, and one count of bribing a witness arising from subsequent events. The State alleged two aggravating circumstances with respect to the second degree assault charge: that Aquiningoc had prior unscored criminal history under RCW 9.94A.535(2)(b) and that the crime was a domestic violence offense under RCW 9.94A.535(3)(h)(i) and (ii).

The jury found Aquiningoc not guilty on the malicious mischief charge and one of the three witness tampering charges; he was found guilty as charged on all other counts. By special verdict, the jury found that the second degree assault was a domestic violence offense under RCW 9.94A.535(3)(h). At sentencing, the trial court determined that Aquiningoc's "prior unscored misdemeanor or prior unscored foreign criminal history results in a presumptive sentence [on the second degree assault] that is clearly too lenient in light of the purpose of the

4

[Sentencing Reform Act of 1981] as expressed in RCW 9.94A.010." CP at 29. And, in written findings of fact and conclusions of law, the court concluded that the "aggravating factors found by the court and jury support[ed] the imposition of an exceptional sentence above the standard range." Id. Accordingly, the trial court imposed an exceptional sentence of 102 months confinement on the second degree assault conviction. The trial court imposed standard range sentences on the witness tampering convictions, 364 days each on the fourth degree assault and violation of a no contact order convictions, and entered a no contact order protecting Aquiningoc's daughter. The terms of confinement were to be served concurrently.

Aquiningoc appealed the judgment and sentence to this court. Finding several errors, we remanded for vacation of one of his two witness tampering conviction, consideration of less restrictive alternatives to the no-contact order, and reconsideration of the exceptional sentence.

At the resentencing hearing, Aquiningoc maintained that appointed counsel had not conferred with him sufficiently in preparation for the resentencing hearing. He also disagreed with defense counsel's advice that he was unlikely to receive a different sentence on remand and objected to his attorney's alleged refusal to present mitigating factors to the court. Accordingly, Aquiningoc moved the court for permission to discharge appointed counsel and proceed pro se. The court granted Aquiningoc three continuances so that he could either retain private counsel or prepare to represent himself, as requested. After the last

continuance, Aquiningoc informed the court that he had not been able to retain private counsel and wished to represent himself.

Before granting Aquiningoc's request to proceed pro se, the trial court conducted a brief colloquy. The judge cautioned Aquiningoc that certain technical requirements would govern the proceedings and that appointed counsel would be better equipped to meet these challenges. At the end of this colloquy, the court warned Aquiningoc that it "would be better if you have an attorney," but granted Aquiningoc's request to represent himself. VRP (02/14/14) at 31-32. Aquiningoc refused to allow appointed counsel to remain as standby counsel.

Following argument from Aquiningoc and the State, the trial court vacated one witness tampering conviction and modified the no contact order. The trial court also concluded that the exceptional sentence originally imposed was justified based solely on the domestic violence aggravating factor found by the jury. The court entered a new judgment and sentence, which imposed the same exceptional sentence of 102 months that had been imposed previously.

Aquiningoc appeals.

## DISCUSSION

### I. Double Jeopardy

The double jeopardy provisions of the federal and state constitutions "protect a defendant from being punished multiple times for the same offense." State v. Allen, 150 Wn. App. 300, 312, 207 P. 3d 483 (2009) (citing State v. Adel, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998); see also, U.S. Const. amend. V; Wash. Const. art. I, § 9. In his first appeal, Aquiningoc unsuccessfully argued that

his convictions for both second and fourth degree assault violated the protections against double jeopardy because there was no clear finding from the jury that its verdicts were based on separate acts of assault. We rejected his argument because the record revealed that the prosecutor had made a clear election to the jury of which act supported each charge.

On appeal from the resentencing hearing, Aquiningoc asks us to reconsider our ruling on the double jeopardy issue in light of State v. Villanueva-Gonzalez, 180 Wn.2d 975, 980-81, 329 P.3d 78 (2014), which the Supreme Court decided after remand. But the case is unhelpful to Aquiningoc.

In Villanueva-Gonzalez, the Court held that when the acts underlying two assault convictions occur as part of the same course of conduct, they are part of the same unit of prosecution and may not be separately punished. Id. at 984. Multiple convictions for such a course of conduct violates the state and federal prohibitions against double jeopardy. Id. at 986.

The Court identified several factors to be considered in determining whether a defendant's multiple assaultive acts constituted one course of conduct, including:

- The length of time over which the assaultive acts took place,
- Whether the assaultive acts took place in the same location,
- The defendant's intent or motivation for the different assaultive acts,
- Whether the acts were uninterrupted or whether there were any intervening acts or events, and
- Whether there was an opportunity for the defendant to reconsider his or her actions.

Id. at 985. Applying these factors to the facts of the case, the Court reasoned:

7

First, the assaultive actions for which [Villanueva-Gonzalez] was charged—head butting the victim and then grabbing her neck and holding her against some furniture—took place in the same location. Second, the record implies (although does not clearly state) that the actions took place over a short time period, and there is no indication in the record of any interruptions or intervening events. Similarly, there is no evidence that would suggest that he had a different intention or motivation for these actions or that he had an opportunity to reconsider his actions. Based on the evidence in the record before us, we conclude that Villanueva-Gonzalez's actions constituted a single course of conduct. Therefore, we affirm the Court of Appeals and hold that his two assault convictions violated double jeopardy.

Id. at 985-86.

In contrast to Villanueva-Gonzalez, the assaultive acts in this case occurred over a relatively long period of time, during which Aquiningoc and his victim moved to several locations throughout the apartment. And, unlike the continuous and uninterrupted assault in Villanueva-Gonzalez, Aquiningoc's attack was punctuated by several instances of relative calm, during which his focus turned to packing clothing, destroying Ashley's belongings, trashing her apartment, and arguing. These interruptions in the violence show that Aquiningoc had opportunities to reconsider his actions after the first assaultive acts in the living room. Finally, unlike the assault in Villanueva-Gonzalez, there was evidence here that each of the acts underlying Aquiningoc's assault convictions had a separate motive. The jury heard testimony that Aquiningoc told Ashley he strangled her in order to punish her for attempting to defend herself against his attacks and that he slapped Ashley in the bathroom because he believed she lied to him when she denied his allegations of infidelity.

8

The facts of this case distinguish it from Villanueva-Gonzalez. Because the holding in Villanueva-Gonzalez does not clearly necessitate a different resolution of Aquiningoc's double jeopardy claim than that reached in his first appeal, the interests of justice do not demand discretionary review of the claim in this appeal from the resentencing hearing.

## II. Waiver of the Right to Counsel

Criminal defendants have a federal and state constitutional right to waive assistance of counsel and represent themselves. Faretta v. California, 422 U.S. 806, 819, 95 S. Ct. 2525, 2533, 45 L. Ed. 2d 562 (1975); State v. Woods, 143 Wn. 2d 561, 585, 23 P.3d 1046, 1061 (2001). "When an accused manages his own defense, he relinquishes ... many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." Faretta, 422 U.S. at 835 (citing Johnson v. Zerbst, 304 U.S. 458, 464-65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). "[H]e should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" Id. (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 1942)). Additionally, a criminal defendant's request to proceed pro se must be (1) voluntary, (2) timely made, and (3) stated unequivocally. Id. at 807; Woods, 143 Wn.2d at 585. We review a trial court's determination that a defendant has validly waived the right to counsel for abuse of discretion. In re Rhome, 172 Wn.2d 654, 667, 260 P.3d 874 (2011).

At the resentencing hearing, Aquiningoc filed a written motion to dismiss assigned counsel and proceed pro se. He also made repeated verbal requests to represent himself. The trial court granted Aquiningoc's request to waive his right to counsel, but not before conducting a colloquy to ensure that Aquiningoc knew of the technical requirements of the proceeding and the risks of proceeding pro se. However, the trial court did not affirmatively advise Aquiningoc of the charges against him or the potential punishment he faced. Thus, Aquiningoc argues that, under the circumstances, the trial court abused its discretion when it accepted his waiver of the right to counsel because he did not make the waiver knowingly, intelligently and voluntarily. We disagree.

When a defendant unequivocally requests to represent himself, it is the responsibility of the trial court to assure the "decision[ ] regarding self-representation [is] made with at least minimal knowledge of what the task entails." City of Bellevue v. Acrey, 103 Wn.2d 203, 210, 691 P.2d 957 (1984). The defendant must be apprised of the nature of the charges, the possible penalties, and the disadvantages of self-representation. Id. at 211; Woods, 143 Wn.2d at 588. "[A] colloquy on the record is the preferred means of assuring that defendants understand the risks of self-representation." Acrey, 103 Wn.2d at 211. "Nonetheless, in cases where no colloquy exists on the record, [Washington courts] will look at any evidence on the record that shows defendant's actual awareness of self-representation." Id. "In the absence of a colloquy, the record must somehow otherwise show that the defendant understood the seriousness of the charges and knew the possible maximum penalty. The record should also

show that the defendant was aware of the existence of technical rules and that presenting a defense is not just a matter of telling one's story." Id. (Citing Maynard v. Meachum, 545 F.2d 273 (1st Cir. 1976)).

In this case, there is no dispute that Aquiningoc timely and unequivocally requested to represent himself during the resentencing proceedings. The trial court also engaged in a colloquy to ensure that Aquiningoc's waiver was knowing and intelligent. The court asked:

> So since what we're talking about is what is the appropriate level of sentence here, at this point in time, have you studied any case law or any other law about the process of sentencing? Are you familiar with those guidelines and the sentencing grid and all those things that are used in the process of sentencing someone in this state?

VRP (01/14/14) at 30. Aquiningoc responded, "Yes, Your Honor." VRP (01/14/14) at 30. The court also inquired: "Okay, and do you understand do you think the legal basis for exceptional sentences as opposed to standard range sentences?" Resentencing VRP at 30. Aquiningoc responded, "In the professional capacity Your Honor, I do not, but as just a layman in propria persona representing myself, I studied enough to understand, yes, Your Honor." VRP (01/14/14) at 30. The court admonished Aquiningoc that he would not receive assistance from the court, stating, "I won't assist you this way or that way. That's not going to happen. You understand that?" VRP (01/14/14) at 31. Aquiningoc said he understood. Finally, the court advised Aquiningoc of the perils of self-representation, stating:

> I think it would be better if you have an attorney to speak for you and to represent you. [Appointed counsel] is an experienced criminal defense lawyer. He knows how to

> present information to the Court. He also understands the intricacies of the law that are involved here.
>
> I don't think it's wise for you to try and represent yourself, because although you have some familiarity with the law, you indicated to me that you're not fully aware of it. So I'm going to urge you to continue to use counsel here. I'm not going to say you have to. I'm just suggesting that that might be in your best interest, but it's your decision.

VRP (01/14/14) at 31.

The trial court did not expressly advise Aquiningoc of the nature and classification of the charges against him and the maximum penalty associated with those charges. Nevertheless, it is apparent from the record that Aquiningoc had the requisite knowledge at the time of the waiver. Prior to the resentencing hearing, Aquiningoc had already been tried, convicted, and sentenced once in this case. He had been present in the courtroom during trial and for the jury's verdicts on each count charged against him. And it is clear from Aquiningoc's written motion to discharge counsel at the resentencing hearing that he had read the mandate from the first appeal in this case, which lists all the charges he was convicted of. Thus, the record demonstrates that Aquiningoc had actual knowledge of the nature and classification of the charges against him.

Likewise, the record indicates that Aquiningoc was aware of the potential jeopardy he faced on resentencing. Before trial, he had signed the written defendant's acknowledgment of rights form, which listed the second degree assault charge against him along with the maximum penalty of "10 yrs/$20,000 for the Class B Felony." CP at 146. The maximum penalty on this charge, which was the most significant Aquiningoc faced, was reiterated in the trial court's first

12

judgment and sentence in this case. That document also listed the standard ranges associated with each of the charges against him. Thus, it is beyond reasonable dispute that Aquiningoc was well aware of the jeopardy he faced.

Because the record shows that Aquiningoc timely and unequivocally asserted his right to represent himself with knowledge of the seriousness of the charges, the maximum standard range penalty, and the existence of technical rules that governed the proceedings, the trial court did not abuse its discretion by concluding that he validly waived the right to counsel.

### III.  Sentence

On remand, the trial court resentenced Aquiningoc based on the same criminal history presented at the initial sentencing hearing and the State's unchallenged offender score calculations. Aquiningoc challenges the sentence for several reasons, which we find have no merit.

First, Aquiningoc renews his argument, advanced for the first time at the resentencing hearing, that the State presented insufficient evidence of the prior convictions included in his offender scores. This argument is not properly before us on appeal.

A trial court's discretion to resentence on remand is limited by the scope of the appellate court's mandate. State v. Kilgore, 167 Wn.2d 28, 42, 216 P.3d 393 (2009). And where a trial court exercises no discretion on an issue, it is not properly before this court on review. State v. Barberio, 121 Wn.2d 48, 50-51, 846 P.2d 519 (1993); accord, Kilgore, 167 Wn.2d at 43; State v. Parmelee, 172 Wn. App. 899, 905, 292 P.3d 799, review denied, 172 Wn.2d 1027 (2013).

13

In this case, the mandate empowered the trial court to three ends: (1) vacation of one witness tampering conviction; (2) consideration of alternatives to the no contact order concerning Aquiningoc's daughter; and (3) consideration whether the exceptional sentence was properly based on the one aggravating factor found by the jury. The mandate affirmed the judgment and sentence "[i]n all other respects," and did not authorize the trial court to reconsider the validity of Aquiningoc's criminal conviction history. CP at 45. Given the scope of the mandate, the resentencing court properly declined Aquiningoc's invitation to review his conviction history. And because the trial court exercised no discretion on this issue, it is not properly before this court.

Next, Aquiningoc argues that after following our mandate to vacate one of his two witness tampering charges, the trial court improperly counted the charge as a "current offense" in his offender score. We review the calculation of Aquiningoc's offender score de novo. State v. Roche, 75 Wn. App. 500, 513, 878 P.2d 497 (1994).

In calculating a defendant's offender score for purposes of identifying the standard range sentence for a felony conviction, courts consider both the defendant's current offenses and prior convictions in the defendant's criminal

14

history. See, RCW 9.94A.589(1)(a).[1] Aquiningoc's criminal history showed three adult felony convictions and eight juvenile felony convictions between 1985 and 2007, none of which washed out under RCW 9.94A.525.[2] The State represented that based on this history, Aquiningoc's offender score was eight on the sole remaining witness tampering charge and nine on the second degree assault. Standby counsel agreed with the State's offender score calculation and the court accepted it as accurate.

Aquiningoc is understandably chagrined because according to the State's calculation, his offender scores on remand—eight on the witness tampering charge and nine on the second degree assault—remained the same as they were before the trial court vacated the second witness tampering conviction. However, independent review of Aquiningoc's conviction history reveals that, to

---

[1] RCW 9.94A.589(1)(a) provides:

Except as provided in (b) or (c) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535. "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. This definition applies in cases involving vehicular assault or vehicular homicide even if the victims occupied the same vehicle.

[2] Aquiningoc set forth a different version of his criminal history. He asserted that only two prior convictions from 1991, one from 1995, and one from 2007 counted toward his offender scores in this case. However, it is clear from the record that Aquiningoc mistakenly omitted several felony convictions, such as the eight convictions he sustained between 1985 and 1988. It is also clear that Aquiningoc improperly counted at least one misdemeanor conviction from 1991. Thus, the trial court properly declined to rely on Aquiningoc's offender score calculations.

15

the extent that there was error in calculating Aquiningoc's offender score, that error appears to have occurred at the initial sentencing hearing, not on remand.

RCW 9.94A.525(7) and (8) set forth the method for assigning points to each of Aquiningoc's current offenses and prior convictions to calculate his offender score. Under those provisions, we calculate Aquiningoc's witness tampering offender score by counting one half point for each of Aquiningoc's eight juvenile felony convictions, three points for each adult felony conviction, and one point for the current offense of second degree assault. The resulting score is eight for the witness tampering charge. RCW 9.94A.525(7) requires double scoring of Aquiningoc's 1995 second degree assault conviction for purposes of calculating his second degree assault offender score. Counting one point for each of his two remaining adult felonies, four points for his juvenile felonies, and one point for his witness tampering current offense results in a score of nine on the second degree assault. Thus, we find no error in the trial court's offender score calculations on remand.

Aquiningoc also challenges the exceptional sentence imposed on remand, arguing that the trial court relied on factors not properly found by the jury. In reviewing an exceptional sentence, we engage in a three-part analysis. First, we asks whether the factors listed by the trial court for an exceptional sentence are supported by the underlying record. We apply a "clearly erroneous" standard to this review. Second, we determine whether the factors used by the trial court are valid as a matter of law. Finally, we determine, under an "abuse of discretion" standard, whether the sentence is clearly too lenient or clearly too excessive.

State v. Cardenas, 129 Wn.2d 1, 5-6, 914 P.2d 57 (1996) (citing State v. Solberg, 122 Wn.2d 688, 705, 861 P.2d 460 (1993); State v. Batista, 116 Wn.2d 777, 792, 808 P.2d 1141 (1991)).

Trial courts have discretion to impose a sentence outside the standard range if the current offense "involved domestic violence, as defined in RCW 10.99.020[3]" and the offense "occurred within sight or sound of the victim's or the offender's minor children under the age of eighteen years. RCW 9.94A.535(3)(h)(i). Aquiningoc does not challenge the trial court's discretion to impose an exceptional sentence on his second degree assault conviction based on this aggravating circumstance. Rather, he contends that the trial court relied on entirely separate facts to justify its exceptional sentence. The argument lacks merit.

At the resentencing hearing the trial court heeded our directive in the mandate that the uncharged criminal history aggravating factor must be vacated because it was not found by the jury. The court then considered the State's recommendation and reviewed the transcripts of the first sentencing hearing in order to refresh its recollection regarding its original reasons for imposing an exceptional sentence. Ultimately, the court concluded that the domestic violence aggravating factor alone justified the exceptional sentence imposed in this case. It explained:

> It was my belief [at the first sentencing hearing] and the court of
> appeals has asked this Court to determine what it was that was the

---

[3] The statute defines "domestic violence" as, among other things, second degree assault committed by one family or household member against another. RCW 10.99.020(5)(b).

basis for the aggravating factor, and it was my belief at that time, and this language refreshes my recollection of that, but it was always my belief that because the jury had clearly found a domestic violence aggravator on the assault second charge, they clearly made that finding, it's the determination in the special verdict form that under those circumstances that alone was sufficient for an aggravator factor as an aggravating factor for an exceptional sentence.

I believe that it was compounded by the other things that were brought to the Court by Ms. Bracke, and the court of appeals has said the Court may not consider the Canadian conviction, and so I will not consider that, and with that out of the mix, it's still my belief that the aggravating factor found by the jury is such that it is a basis for the exceptional sentence in this case, with or without the other.

I think in and of itself, it was always my belief that that was sufficient. My belief was that was as I said enhanced, if you will, by the other, but that was the basis for the determination.

So the Court would find specifically that the jury-determined aggravator factor was the basis, the primary basis for the Court to sentence the first time and will continue to be so now.

VRP (01/14/14) at 54-55. It is evident from the trial court's oral ruling that it thought the domestic violence aggravating circumstance found by the jury on its own justified the exceptional sentence imposed on remand. Given the facts surrounding the crimes in this case, we cannot find the trial court's reliance on this factor alone clearly erroneous.

Aquiningoc also seems to argue that the domestic violence aggravating circumstance relied on by the trial court was invalid as a matter of law because the jury was encouraged to premise its finding on either of two alternatives and was not asked to specify which alternative means it found. Thus, according to Aquiningoc, the jury's special verdict finding the domestic violence aggravating

18

circumstance violated his right to a unanimous jury verdict. This argument also lacks merit.

"If the evidence is *sufficient* to support each of the alternative means submitted to the jury, a particularized expression of unanimity as to the means by which the defendant committed the [charged act] is unnecessary to affirm a conviction because we infer that the jury rested its decision on a unanimous finding as to the means." State v. Ortega-Martinez, 124 Wn.2d 702, 707-08, 881 P.2d 231 (1994). In this case, the State charged and proved this domestic violence aggravating circumstance based on two alternative statutory means: (1) "pattern of abuse" and (2) "presence of a minor child" (RCW 9.94A.535(3)(h)(ii)). VRP (07/22/11) at 211-12. Accordingly, at trial the State elicited testimony from the victim regarding repeated incidents of psychological and physical abuse that she endured at Aquiningoc's hands over a period of about two years, as well as testimony that the assaults charged in this case were committed in the sight or sound of her two-year-old daughter. Viewed in the light most favorable to the State, this evidence was more than sufficient to support a finding by the jury that the domestic violence aggravating circumstance was present in this case under either theory alleged.

Since we conclude that the domestic violence aggravating circumstance was not invalid as a matter of law and the trial court's decision to rely on that factor was not clearly erroneous, we are left to determine whether the sentence is clearly too excessive. In determining whether a sentence is clearly excessive, we apply an abuse of discretion standard, upholding the decision unless no

19

reasonable judge would have imposed the exceptional sentence. Cardenas, 129 Wn.2d at 13. Based on the facts of the case, we find the imposition of 102 months incarceration, which is 18 months lower than the maximum allowable term and the State's recommendation, was not unreasonable.

## IV. Statement of Additional Grounds

Aquiningoc raises several issues in a statement of additional grounds. These issues run the gamut of constitutional and evidentiary challenges, but they arise from three events: (1) the alleged failure of appointed counsel in his Bellingham Municipal Court assault IV action[4] to communicate a favorable plea offer; (2) the State's alleged mischaracterization of police reports not admitted in evidence during motions in limine; and (3) the trial court's denial of the deliberating jury's request to see the original victim's summary.

As discussed previously, the appellate court's mandate determines the scope of a remand order. Kilgore, 167 Wn.2d at 49. The trial court, on remand, has discretion to act only insofar as it is authorized by the appellate court's mandate. Id. And "[o]nly if the trial court, on remand, exercised its independent judgment, reviewed and ruled again on [an] issue does it become an appealable question. Barberio, 121 Wn.2d at 50 (interpreting RAP 2.5(c)(1)).

In this case, our mandate empowered the trial court to take three actions on remand: "vacation of one witness tampering conviction, reconsideration of the exceptional sentence, and consideration of alternatives to the no-contact order

---

[4] According to Aquiningoc, the municipal court action was dismissed shortly after review. The appellate record contains no information on the disposition of the municipal court action.

concerning the defendant's daughter." CP at 45. The trial court had no authority on remand to consider the issues raised in Aquiningoc's statement of additional grounds. Because the trial court did not purport to exercise discretion on these matters, they are not appealable.

Affirm.

WE CONCUR:

_____ C.J.

_____ J.

_____ J.